## STATE v. RALPH CAMP.

(Filed 2 March, 1966.)

**1. Homicide § 27—**

The charge in this case on the right of self-defense *held* not subject to the construction that the jury had to find both that the killing was necessary and that defendant reasonably believed it to be so in order to sustain the defense, but, construed contextually, correctly instructed the jury on this aspect that an apparent necessity, reasonable in the light of the circumstances as they appeared to defendant, would be sufficient.

**2. Criminal Law § 155—**

An objection to the admission of evidence is necessary to present defendant's contention that the evidence was incompetent.

**3. Criminal Law § 71—**

Where the record affirmatively shows that defendant sent for officers after he had killed a man and told them about it on the way to the scene, there is nothing to indicate that his statements were not voluntary and competent.

MOORE, J., not sitting.

APPEAL by defendant from *Campbell, J.,* August 1965 Session of POLK.

The defendant was indicted for the murder of Andrew Pritchard on 26 September 1964. He admitted that he shot and instantly killed Pritchard with a rifle while Pritchard was sitting in the driver's seat of his automobile, with his feet out of the open left door thereof, the automobile being parked in the yard of the defendant's dwelling house. He contended that he shot in self-defense. The jury returned a verdict of guilty of manslaughter and the defendant was sentenced to confinement in the State Prison for a term of ten years.

The evidence offered by the State may be summarized as follows:

A neighbor of the defendant telephoned the Sheriff's office stating that the defendant had shot Pritchard and would be waiting for the officers at the neighbor's house. Upon their arrival they found the defendant holding a rifle. He immediately handed it to the officers, got in their car and went to his house with them. He told them that he had shot Pritchard with the rifle; that Pritchard had been at his house, with others, that afternoon and evening; that he and Pritchard were arguing about Pritchard's claim of ownership of the rifle; that he asked Pritchard several times to leave but Pritchard refused to do so and threatened to kill or beat the defendant; and that he, thinking Pritchard was reaching for the glove compartment of his car, shot and killed him.

Upon arrival at the defendant's house the officers found Pritchard's body lying on its back on the front seat of his automobile, with his feet out of the door on the driver's side. He was dead, with a bullet wound near the heart. (It was stipulated that the doctor who examined Pritchard, if present, would testify that the bullet wound was the cause of death.) An unlighted cigarette lay upon his chest and a cigarette lighter was beside his body at the right side. The officers found no weapon of any type upon Pritchard's body or in his automobile. Pritchard was a larger man than the defendant. The defendant showed the officers where he was standing when he shot Pritchard, this being fifteen to twenty feet from where Pritchard was sitting in the automobile. The door of the car being open, the defendant could have seen inside the car and could have seen Pritchard's body down to his hips. Prior to this occasion the defendant had been heard to say that if Pritchard did not stay away from him and leave him alone he was going to kill Pritchard.

The defendant testified in his own behalf to the following effect:

He is not married and, at the time of this occurrence, lived in the house in the yard of which it took place. On the afternoon in question, he was sitting in his house with other visitors when Pritchard knocked on the door and was invited in by the defendant. After a time Pritchard claimed to own the rifle and stated that he was going to take it, which the defendant forbade him to do except through claim and delivery proceedings, the defendant claiming the rifle was his. A quarrel resulted in the course of which there was much cursing of the defendant by Pritchard. The defendant told Pritchard to stop cursing or leave. Thereupon Pritchard walked out of the house and got in his car, which was parked in the front yard, but refused to leave the premises. The defendant and his guests, one of whom was Pritchard's brother, thereupon got in an automobile belonging to one of the guests and left to visit another friend, the defendant taking his rifle with him.

After about an hour the defendant and one of his friends returned. Pritchard was still sitting in his car in the defendant's yard. He got out of the car stating that he was going to beat the defendant, and resumed cursing. The defendant asked him to leave. Pritchard started toward the defendant whereupon the defendant pointed the rifle at him and told him to go back. Pritchard went back and got in the car. This procedure was repeated a second time. Following the second return to the car, Pritchard sat therein cursing the defendant and saying he was going to kill him. Pritchard reached over to the right side of the car and thereupon the defendant shot him. He then went to the neighbor's house and requested him to call the Sheriff.

The defendant denied having made any statement that he would kill Pritchard if the latter did not leave him alone.

B. D. Wilson, the neighbor to whose house the defendant went following the shooting, testified in behalf of the defendant to the effect that he heard Pritchard cursing and talking loudly and heard the defendant ask Pritchard to leave and Pritchard refuse to do so before he heard the shot.

The defendant assigns as error certain rulings of the court upon the admission of evidence, the failure of the court to dismiss the case at the close of the evidence, and certain portions of the charge with reference to the right of self-defense.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*
*Hamrick & Hamrick for defendant appellant.*

PER CURIAM. The trial judge included in his charge to the jury a full and fair review of the evidence and of the contentions of both parties concerning the matter of self-defense. He then instructed the jury as follows:

"[T]he Court instructs you that if the defendant had a reasonable apprehension from the facts and the circumstances as they appeared to him at the time he committed the homicide that he, the defendant, would be killed or suffer great bodily harm unless he took the life of Andrew Pritchard, then under these circumstances he had the right to stand upon his right of self-defense provided he himself was not at fault.

"Now, the Court instructs you that in passing upon this defense you must judge the defendant's conduct upon the facts and circumstances as they appeared to him at the time he committed the act and if you find that he had a reasonable apprehension at the time he killed Andrew Pritchard, that he, Ralph Camp, was about to lose his own life or receive great bodily harm, then the defendant had the right to kill Andrew Pritchard and would not be guilty of any crime; but the Court further instructs you that the reasonableness of the apprehension on the part of Ralph Camp is not for him to decide, but it is for you to determine from the facts and circumstances and the evidence in the case as they appeared to Ralph Camp at that time; the law in North Carolina being that a person has the right to kill in self-defense to prevent death or great bodily harm and may kill when it is necessary if he believes it to be so and has a reasonable ground for that belief, the reasonable-

ness of the belief depending upon the facts and circumstances as they appeared to the defendant at the time of the killing, but the reasonableness of the belief must be judged by the jury and not by the defendant."

The defendant now argues that the language following the last semi-colon constituted an instruction that in order to acquit the defendant on the ground of self-defense the jury would have to find both that the killing was necessary and that the defendant reasonably believed it to be so. We do not so construe the instruction, considered in its entirety as it must be.

A homicide may be excusable on the ground of self-defense even though the killing was not actually necessary. An apparent necessity therefor, reasonable in the light of the circumstances as they then appeared to the defendant, is sufficient so far as this element of the defense is concerned. *State v. Lee,* 258 N.C. 44, 127 S.E. 2d 774; *State v. Fowler,* 250 N.C. 595, 108 S.E. 2d 892; *State v. Goode,* 249 N.C. 632, 107 S.E. 2d 70. The foregoing instruction is in accord with this principle.

As to the admission of testimony by police officers concerning statements made to them by the defendant, it is sufficient to note that no objection to the introduction of this evidence was made at the trial; there is nothing in the record to suggest that the statements were not voluntary and the record shows affirmatively that the defendant sent for the officers after the killing and told them about it on the way to the scene of it. The remaining assignments of error, relating to the admission of evidence and the failure to enter a judgment of nonsuit, are also without foundation.

No error.

MOORE, J., not sitting.